EXHIBIT TIE CHART - COMPLIANT PER DOC.14 PAGE 7(3)
Case 1:26-cv-647-ECM-SMD I Noble Halona Bey - Indigenous woman I 20 ON ME - Background Only Facts 15-19

1. Ex.N-8 - Jail logs Bighems
Para: 15, 16
Date: 10/23/24 to 05/11/26 Continuous custody
Factual Allegation: Background only to show why retaliation - Son Joshua Mikael Bighems booked - Cannot be employed/ traveling - NOT claim for son - Explains why petitioned - 20 ON ME separate

2. Ex.C/D - Barnes/Dodson affidavits
Para: 16
Date: 11/13/24 and 10/14/25 false dates
Factual Allegation: Background only - Several sworn affidavits against Bighems son impossible per Ex.N-8 - Shows pattern complained Jan 2 - Motive for retaliation - NOT claim for son

3. Ex.B - Warrants WR 2026 900074
Para: 27
Date: DONE Jan 7, Filed 2:01 PM Jan 8 - 3h 31m after 10:23 AM arrest
Factual Allegation: 20 impossible on Plaintiff - Backdated - No docket Jan 7 - Pre-planned - No probable cause - Part of 20 impossible on Plaintiff

4. Ex.Y - Transcript Jan 2 NAACP, Sheriff
Para: 19
Date: Jan 2 2026 - Valenza Turner NAACP meeting
Factual Allegation: Notice policymaker - Petitioning for son about several impossible on Bighems - Policymaker had power - 6 days before Jan 8 arrest - Causation

5. Ex.Commission Photo
Para: 18
Date: Oct 23 2025 Board meeting
Factual Allegation: Notice Commission municipality - Petitioning for son - Failure to train Monell - Background only - NOT claim for son

6. Ex.I - ADA request
Para: 31, 32, 33
Date: Aug 12 2026 - Private disclosure then open court
Factual Allegation: Steensland humiliated asking "what's my disabilities" after private disclosure - Denied without findings - Violates Lane 541 U.S. 509 - ADA Title II

7. Ex.G - Binford hardship ruling, recusal
Para: 34
Date: Hardship ruling then recused
Factual Allegation: Binford ruled hardship without findings Fed R Civ P 52 then recused per correction - Steensland did NOT recuse - No findings

8. Ex.F - Statement "not appearing as licensed attorney" + Mutilated version
Para: 35, 36, 37
Date: Aug 2025 Filed then mutilated
Factual Allegation: UPL AFTER MUTILATION - Woodall marked out intentions Ex.F - Then UPL arrest after mutilation - Part of 20 impossible on Plaintiff - Causation but for

9. Ex.Receipt $394 fee
Para: 39, 40
Date: Same day exemplified
Factual Allegation: FALSE INSTRUMENT AFTER EXEMPLIFICATION - Woodall/Richardson charged $394 to exemplify same document then arrested for false instrument - Entrapment estoppel - Raley - Part of 20 impossible

# COUNT + STATUTE CHART - COMPLIANT PER DOC.14 PAGE 8(4)

Case 1:26-cv-647-ECM-SMD | Noble Halona Bey - Indigenous woman | NO DAMAGES FROM JUDGES - Injunctive/Declaratory Only

Each Count: Specific Statute + Specific Defendant(s) + Specific Facts - No Incorporate By Reference - No Shotgun

| Count | Statute | Defendant(s) | Factual Allegations - Para - Causation |
|---|---|---|---|
| I<br>Retaliation | 1st Amend Petition<br>42 USC 1983<br>Hartman v Moore | Barnes<br>Dodson | Protected: Para 18 Oct 23 2025 Commission Photo + Para 19 Jan 2 2026<br>Transcript Ex.Y petitioning for son - Background only<br>Adverse: Para 20 20 impossible on Plaintiff, Para 27 backdated warrants<br>Causation: 6 days temporal, Barnes gave orders Para 24 |
| II<br>False Arrest<br>No Warrant | 4th Amend<br>42 USC 1983 | Lee | Para 22 while getting up to leave out courtroom Richardson screamed<br>Para 23 10:23 AM hallway warrantless arrest - No crime in presence<br>Para 27 warrant 2:01 PM DONE Jan 7 backdated - No probable cause |
| III<br>False Complaints | 4th Amend<br>Malicious<br>42 USC 1983 | Dodson<br>Barnes ordered | Para 25 Dodson signed 20 impossible on Plaintiff without PC<br>Para 24 Barnes gave orders per Lee<br>Para 27 backdated WR 2026 900074 - Part of 20 |
| IV<br>ADA | ADA Title II<br>42 USC 12132<br>Lane 541 US 509<br>No Damages Judges | Richardson official<br>Steensland official<br>+ admin<br>NO DAMAGES | Qualified disability panic disorder Para 1,30 Indigenous woman<br>Para 30 Richardson denied July 23 - Official Ex parte Young prospective<br>Para 32-33 Steensland humiliated 'what's my disabilities' after private<br>then denied without findings - Admin Forrester - No immunity |
| V<br>Access Courts<br>Mutilation | 1st Amend<br>Petition<br>42 USC 1983 | Woodall | Para 35-36 Aug 2025 filed statement 'not appearing as licensed<br>attorney' Ex.F then Woodall mutilated intentions<br>Para 37 AFTER mutilation UPL arrest - Part of 20 - Causation but for |
| VI<br>Entrapment<br>Estoppel | 14th Due Process<br>Raley v Ohio<br>42 USC 1983<br>No Damages Richardson | Woodall<br>Richardson official<br>+ admin<br>Damages only Woodall | Para 36-37 UPL AFTER MUTILATION Ex.F<br>Para 39-40 $394 fee Ex.Receipt exemplified then false instrument<br>Same document - Administrative act not judicial - Forrester<br>Para 22 screaming while getting up to leave not judicial |
| VII<br>Conspiracy | 42 USC 1985(2)<br>Obstruct Justice<br>Retaliation | Barnes<br>Dodson | Para 20 agreed file 20 impossible on Plaintiff to obstruct<br>petitioning for son Facts 15-19 background only motive<br>Para 24-27 overt acts - False complaints, directing arrest |
| VIII<br>Monell<br>Policy | Monell 436 US 658<br>McMillian 520 US 781<br>42 USC 1983 | Valenza official<br>policymaker<br>Commission<br>Goodman official | Para 18 Oct 23 2025 notice Commission Photo<br>Para 19 Jan 2 2026 notice Valenza Ex.Y - Failure train/supervise<br>Para 28 allowed complained-of officers arrest 6 days after<br>Causation but for policy no 10:23 AM arrest - Policy |
| IX<br>Neglect to<br>Prevent<br>No Brady | 42 USC 1986<br>Neglect<br>No Brady per request | Valenza<br>Goodman DA<br>No Brady | Para 19 knowledge Jan 2 Ex.Y petitioning for son - Power as DA<br>and Sheriff policymaker to prevent bad faith prosecution mother<br>Para 28 neglected 6 days - Para 27 backdated warrants<br>Causation BUT FOR neglect no 20 charges - Background only |

**DAMAGES: $45M ONLY AGAINST Barnes, Dodson, Lee, Woodall, Valenza, Goodman, Commission - NO DAMAGES FROM JUDGES Binford, Steensland, Richardson**

JUDGES: Official Ex parte Young Prospective Injunctive/Declaratory ONLY - Steensland, Binford, Richardson - Individual Administrative Forrester - No absolute immunity - [redacted]

CERTIFICATE OF SERVICE

Case No: 1:26-cv-647-ECM-SMD
Noble Halona Bey, Indigenous woman, Plaintiff, v. Barnes et al., Defendants
United States District Court for the Middle District of Alabama Southern Division

I, Noble Halona Bey, Plaintiff, Pro Se, Indigenous woman, hereby certify under penalty of perjury under 28 U.S.C. 1746 that on this 22 day of October, 2026, I served the following documents:

1. SECOND AMENDED VERIFIED COMPLAINT - V9 FINAL COMPLIANT PER ORDER DOC.14 - 20 ON ME - BACKGROUND ONLY TO SHOW WHY RETALIATION - NO SHOTGUN - JURY TRIAL DEMANDED BEGINNING AND END

2. EXHIBIT TIE CHART - COMPLIANT PER DOC.14 PAGE 7(3) - Each Exhibit Tied to Factual Allegation

3. COUNT + STATUTE CHART - COMPLIANT PER DOC.14 PAGE 8(4) - Each Count Specific Statute + Defendant + Facts

4. EXHIBITS LIST:
Ex.N-8 - Jail logs Joshua Mikael Bighems 10/23/24 to 05/11/26 continuous
Ex.C/D - Barnes/Dodson affidavits false dates
Ex.B - Warrants WR 2026 900074 DONE Jan 7 filed 2:01 PM Jan 8
Ex.Y - Transcript Jan 2 2026 NAACP meeting Valenza Turner
Ex.Commission Photo - Oct 23 2025 board meeting
Ex.I - ADA request Aug 12 2026 denied
Ex.G - Binford hardship ruling no findings recused
Ex.F - Statement "not appearing as licensed attorney" original + mutilated
Ex.Receipt - $394 exemplification fee, certificate of exemplification

Upon the following parties by the methods indicated: OR

A. Via CM/ECF Electronic Filing - Clerk of Court
United States District Court
Middle District of Alabama
One Church Street
Montgomery, AL 36104
- Filed electronically Pro Se - Copy placed in CM/ECF

B. Via United States Postal Service Certified Mail, Return Receipt Requested, and First Class Mail to Defendants:

1. Brandon Barnes, Deputy
Houston County Sheriff's Office
~~128 N. Highway 12~~ 411 N. Foster
Dothan, AL 36303

2. Justin Dodson, Deputy
Houston County Sheriff's Office
~~128 N. Highway 12~~ 411 N. Foster
Dothan, AL 36303

3. James Lee, Deputy
Houston County Sheriff's Office
~~128 N. Highway 12~~ 411 N. Foster
Dothan, AL 36303

4. Donald Valenza, Sheriff, Official Policymaker
Houston County Sheriff's Office
~~128 N. Highway 12~~ 411 N. Foster
Dothan, AL 36303

5. Carla Woodall, Clerk

Houston County Circuit Court
114 N. Oates Street
Dothan, AL 36303

6. Hon. John Steensland, Circuit Judge - Official Capacity Ex parte Young - NO DAMAGES
Houston County Courthouse
114 N. Oates Street
Dothan, AL 36303

7. Hon. Butch Binford, Circuit Judge - Official Capacity Ex parte Young - NO DAMAGES
Houston County Courthouse
114 N. Oates Street
Dothan, AL 36303

8. Hon. Christopher K. Richardson, Circuit Judge - Official Capacity Ex parte Young - NO DAMAGES
Houston County Courthouse
114 N. Oates Street
Dothan, AL 36303

9. Houston County Commission
462 N. Oates St
Dothan, AL 36303

10. Russ Goodman, District Attorney - Official Capacity - NO BRADY
Houston County District Attorney's Office
114 N. Oates
Dothan, AL 36303

11. John Doe Deputies 1-5 - Via Houston County Sheriff's Office - 128 N. Highway 123, Dothan, AL 36302 - To be identified through discovery

C. Via Certified Mail to Counsel for Defendants (if known) - To be supplemented

I further certify that:
- Fact 22 fixed: While Plaintiff was getting up to leave out courtroom Judge Richardson screamed "what are you looking at" - Para 22 - Indigenous woman
- No damages sought from judges Binford, Steensland, Richardson - Official Ex parte Young injunctive/declaratory only - Forrester - Survives dismissal - Pulliam Lane
- No Brady on Goodman DA per request - Only Neglect 1986 + Bad Faith - Knowledge Jan 2 Ex.Y - Power prevent - Causation BUT FOR - Background only Facts 15-19 to show why retaliation - NOT claim for son - 20 ON ME
- Bighems correct spelling - Joshua Mikael Bighems DOB 10/24/1995
- Each exhibit tied to factual allegation with specific dates per Doc.14 Page 7(3) - Each count specific statute + defendant per Doc.14 Page 8(4) - No shotgun

This filing is made before October 22, 2026 deadline per Order Doc.14 - Preserves right to file suit even after Oct 22 - Montgomery CV-2026-901-665 habeas + this federal V9 Final both filed before Oct 23 - Keep receipts

Executed this 22nd day of October, 2026, in Dothan, Alabama.

Signature: by: Noble Halona Bey
Noble Halona Bey, Pro Se
Indigenous woman
2932 Ross Clark Circle PMB 417
Dothan, AL 36301
Phone: 334-589-3341
Email: Mamat1209@yahoo.com

VERIFICATION UNDER 28 U.S.C. 1746:
I declare under penalty of perjury that the foregoing Certificate of Service is true and correct, and that the facts stated in Second Amended Complaint are true and correct to the best of my knowledge, information, and belief, including Facts 15-19

background only to show why retaliation - Not claim for son - 20 ON ME - Indigenous woman - Petitioning for son Joshua Mikael Bighems.

Executed: By: Nokte Nalona Bey Pro'Se

Date: 10/22/26

# Ex. N-8

SECOND AMENDED COMPLAINT - V4 COMPLIANT PER ORDER DOC. 14

JAIL LOGS - Continuous Custody 10/23/24 to 05/11/26

Para 13, 15

Proves impossible charges - Bighems was in jail, not employed/traveling

CASE: 1:26-cv-647-ECM-SMD

# HOUSTON COUNTY SHERIFF'S OFFICE
## RECORDS UNIT

August 18, 2026

To whom it may concern,

Joshua M. Bighems (B/M; DOB: 10/24/1995) was incarcerated in the Houston County Jail. Mr. Bighems was booked in on 10/23/24 and turned over to AL. D.O.C. on 05/11/26. Feel free to call us with any problems/questions.

Sincerely,

HOUSTON COUNTY JAIL
901 EAST MAIN STREET
DOTHAN, AL 36301

S. Downs
Record Deputy

Exh. B

# Ex. C/D

SECOND AMENDED COMPLAINT - V4 COMPLIANT PER ORDER DOC. 14

BARNES/DODSON FALSE AFFIDAVITS

WR2024 004264.00 and 20 cases

Para 14

Claims Bighems employed 11/13/24 and traveling 10/14/25 while Ex. N-8 shows continuous custody

CASE: 1:26-cv-647-ECM-SMD

DOCUMENT 2

EXH. # 14

ALABAMA JUDICIAL INFORMATION SYSTEM

* * * IN THE DISTRICT COURT OF HOUSTON COUNTY * * *

AGENCY NUMBER: 224-006376

WARRANT NUMBER: WR 2024 004264.00
OTHER CASE NBR: DC24-4047

# COMPLAINT

BEFORE ME THE UNDERSIGNED JUDGE/CLERK/MAGISTRATE OF THE DISTRICT COURT OF HOUSTON COUNTY, ALABAMA, PERSONALLY APPEARED CPL. B. BARNES WHO BEING DULY SWORN DEPOSES AND SAYS THAT HE/SHE HAS PROBABLE CAUSE FOR BELIEVING, AND DOES BELIEVE THAT JOSHUA MIKAEL BIGHEMS DEFENDANT, WHOSE NAME IS OTHERWISE UNKNOWN TO THE COMPLAINANT, DID WITHIN THE ABOVE NAMED COUNTY AND

ON OR ABOUT NOVEMBER 13, 2024, JOSHUA MIKAEL BIGHEMS, KNOWINGLY FAILED TO IMMEDIATELY IN PERSON REGISTER ALL REQUIRED INFORMATION WITH LOCAL LAW ENFORCEMENT IN EACH COUNTY IN WHICH THE ADULT SEX OFFENDER RESIDES OR INTENDS TO RESIDE, ACCEPTS EMPLOYMENT, BEGINS OR INTENDS TO BEGIN SCHOOL ATTENDANCE,OR OTHERWISE TRANSFERS OR TERMINATES ANY RESIDENCE, EMPLOYMENT OR SCHOOL ATTENDANCE, TO-WIT: BEING EMPLOYED AS A TRUCK DRIVER AND FAILING TO NOTIFY THE HOUSTON COUNTY SHERIFF'S OFFICE OF ESTABLISHING THIS EMPLOYMENT AFTER LISTING HIS EMPLOYMENT AS "UNEMPLOYED" SINCE APRIL 2022, IN VIOLATION OF SECTION 15-20A-10 OF THE CODE OF ALABAMA 1975. IN VIOLATION OF 015-20A-010 OF THE CODE OF ALABAMA, AGAINST THE PEACE AND DIGNITY OF THE STATE OF ALABAMA.

[signature]
COMPLAINANT'S SIGNATURE

SWORN TO AND SUBSCRIBED BEFORE ME THIS THE 13 DAY OF NOVEMBER, 2024.

Bailee Simmons
JUDGE/CLERK/MAGISTRATE OF DISTRICT COURT

CHARGES: SORNA VIOLATION 015-20A-010 F FELONY

WITNESS FOR THE STATE

CPL. B. BARNES/C/O HCSO/224-006376/DOTHAN/36301

OPERATOR: BAS DATE: 11/13/2024

EXH. 14 C/D

SEAL OF CIRCUIT COURT STATE OF ALABAMA HOUSTON COUNTY

State of Alabama Houston County
I, Carla Woodall, Clerk of The Circuit, Hereby certify that this is a true correct copy of Complaint filed in this court in Joshua
This the 28 day of October, 20 25
Carla Woodall

DOCUMENT 2

EXH. # 18

ALABAMA JUDICIAL INFORMATION SYSTEM

* * * IN THE DISTRICT COURT OF HOUSTON COUNTY * * *

AGENCY NUMBER: 225-004275

WARRANT NUMBER: WR 2025 002261.00
OTHER CASE NBR: CC25-2115

COMPLAINT

BEFORE ME THE UNDERSIGNED JUDGE/CLERK/MAGISTRATE OF THE DISTRICT COURT OF HOUSTON COUNTY, ALABAMA, PERSONALLY APPEARED CPL. BARNES WHO BEING DULY SWORN DEPOSES AND SAYS THAT HE/SHE HAS PROBABLE CAUSE FOR BELIEVING, AND DOES BELIEVE THAT JOSHUA MIKAEL BIGHEMS DEFENDANT, WHOSE NAME IS OTHERWISE UNKNOWN TO THE COMPLAINANT, DID WITHIN THE ABOVE NAMED COUNTY AND

ON OR ABOUT 10-14-2025, JOSHUA MIKAEL BIGHEMS KNOWINGLY FAILED TO REPORT THAT HE OR SHE INTENDED TO TEMPORARILY BE AWAY FROM HIS COUNTY OF RESIDENCE FOR A PERIOD OF THREE OR MORE CONSECUTIVE DAYS IN PERSON IMMEDIATELY PRIOR TO LEAVING HIS OR HER COUNTY OF RESIDENCE TO LOCAL LAW ENFORCEMENT OF THE COUNTY OF RESIDENCE, OR FAILED TO COMPLETE A TRAVEL NOTIFICATION DOCUMENT, FAILED TO REPORT IN PERSON TO LOCAL LAW ENFORCEMENT THE INTENTION TO LEAVE THE COUNTRY AT LEAST 21 DAYS BEFORE SUCH TRAVEL OR FAILED TO SIGN TRAVEL DOCUMENT, OR UPON RETURN TO THE COUNTY OF RESIDENCE, FAILED TO IMMEDIATELY REPORT TO LOCAL LAW ENFORCEMENT IN EACH COUNTY OF RESIDENCE, TO-WIT: TRAVELED FROM DOTHAN, HOUSTON COUNTY ALABAMA TO HOUSTON TEXAS BY WAY OF ATLANTA AND WEST PALM BEACH. ON 10-16-24 TRAVELED FROM HOUSTON, TEXAS TO ATLANTA, GEORGIA AND ON 10-17-24 TRAVELED BACK TO DOTHAN, ALABAMA WHERE HE ARRIVES AT APPROXIMATELY 3:20 PM.
IN VIOLATION OF SECTION 15-20A-15 OF THE CODE OF ALABAMA 1975.
IN VIOLATION OF 015-20A-015 OF THE CODE OF ALABAMA, AGAINST THE PEACE AND DIGNITY OF THE STATE OF ALABAMA.

COMPLAINANT'S SIGNATURE

SWORN TO AND SUBSCRIBED BEFORE ME THIS THE 08 DAY OF JULY, 2025.

JUDGE/CLERK/MAGISTRATE OF DISTRICT COURT

CHARGES: SORNA VIOLATION 015-20A-015 F FELONY

WITNESS FOR THE STATE

CPL. BARNES/HCSO/225-006376/DOTHAN/36302

OPERATOR: BRL DATE: 07/08/2025

EXH. 18

# Ex. B

SECOND AMENDED COMPLAINT - V4 COMPLIANT PER ORDER DOC. 14

WARRANTS - BACKDATED - PRE-PLANNED RETALIATION

WR 2026 900074

Filed 2:01 PM Jan 8, 2026 - DONE Jan 7, 2026 - No docket Jan 7

Para 24

Arrest 10:23 AM, Warrant 2:01 PM - 3 hrs 31 min later

CASE: 1:26-cv-647-ECM-SMD

ELECTRONICALLY FILED
1/8/2026 2:01 PM
38-DC-2026-900070.00
38-WR-2026-900074.00
DISTRICT COURT OF
HOUSTON COUNTY, ALABAMA
CARLA H. WOODALL, CLERK

State of Alabama
Unified Judicial System
Form CR-58 Rev. 8/98

# WARRANT OF ARREST

(Felonies, Misdemeanors, or Violations)

## IN THE DISTRICT COURT OF HOUSTON COUNTY, ALABAMA

## STATE OF ALABAMA v. NOBLE HALONA LATONYA MYLES BEY

**TO ANY LAW ENFORCEMENT OFFICER WITHIN THE STATE OF ALABAMA:**

☑ Probable cause has been found on a Complaint filed in the court against (name or description of person to be arrested)

NOBLE HALONA LATONYA MYLES BEY

charging the offense of

1. UNAUTHORIZED PRACTICE OF LAW - 034-003-001 CLASS: TYPE: M

as described in the Complaint.

☐ An Indictment has been returned by the grand jury of this county against (name or description of person to be arrested)

charging the offense of

☐ YOU ARE THEREFORE ORDERED to arrest the person named or described above and bring that person before a judge or magistrate of this court to answer the charges against that person and have with you then and have this Warrant of Arrest with your return thereon. If a judge or magistrate of this court is unavailable, or if the arrest is made in another county, you shall take the accused person before the nearest or most accessible judge or magistrate in the county of arrest.

☑ You may release the accused person without taking the accused person before a judge or magistrate:

☑ If the accused person enters into a bond in the amount of $ 500.00 with cash or sufficient sureties by an approved professional bonding company or property with the court clerk.

☐ If the accused person posts a cash bond in the amount of $ ________ with the court clerk.

☐ On his or her personal recognizance

Bond Conditions:

☐ No Bond

EXECUTED

DONE this 7th day of January, 2026
Date

/s/Kellie Smith
Judge/Court Clerk/Magistrate/Warrant Clerk

| State of Alabama<br>Unified Judicial System<br>Form CR-58 Rev. 8/98 | **WARRANT OF ARREST**<br>**(Felonies, Misdemeanors, or Violations)** | **Warrant Number**<br>38-WR-2026-900074.00<br>**Case Number** |
|---|---|---|

## CERTIFICATE OF EXECUTION

I, the undersigned law enforcement officer, certify that I executed the foregoing WARRANT OF ARREST by arresting the accused person named (or described) therein at 11:53 o'clock ☑ a.m. ☐ p.m. on the 8th day of January, 2026, in HOUSTON COUNTY, ALABAMA

After arrest, the accused person was:

☐ Released on appearance bond

☑ Placed in Jail

DONE this 8th day of January, 2026

Date

/s/Mason Alexander Spotts

Signature

Houston County Sheriff's Office

144 North Oates

Dothan, AL 36303

3346774888

EXECUTED

| Form CR-58 Rev. 8/98 | **WARRANT OF ARREST**<br>**(Felonies, Misdemeanors, or Violations)** |
|---|---|

**IDENTIFICATION OF ACCUSED PERSON**

| Name of Accused (or Alias) | Telephone Number |
|---|---|
| NOBLE HALONA LATONYA MYLES BEY | |

| Social Security Number | Driver's License Number | Date of Birth | Age | Race | Sex |
|---|---|---|---|---|---|
| XXX-XX-X674 | AL-5287029 | 12/9/1967 | 58 | WHITE | F |

| Height | Weight | Hair | Eyes | Complexion |
|---|---|---|---|---|
| 5'2" | 200 | BROWN | BROWN | |

| Address of Accused (or Alias) | City | State | Zip Code |
|---|---|---|---|
| 12300 HIGHWAY 59 | MIDLAND CITY | AL | 36350 |

| Name of Employer | Employer's Telephone Number |
|---|---|
| | |

| Address of Employer | City | State | Zip Code |
|---|---|---|---|
| | | | |

EXECUTED

## ALABAMA SJIS CASE DETAIL

**PREPARED FOR: EDD**
8/31/2026 8:23:16 AM

alacourt.com

County: 38 Case Number: DC-2026-900066.00 Court Action: TIME LAPSED PRELIM.
Style: STATE OF ALABAMA V. BEY NOBLE HALONA LATONYA MYL

Real Time

### Case Action Summary

| Date: | Time | Code | Comments | Operator |
|---|---|---|---|---|
| 1/8/2026 | 2:03 PM | JUDG | ASSIGNED TO: (BHL) BENJAMIN H LEWIS (AR01) | AJA |
| 1/8/2026 | 2:03 PM | STAT | INITIAL STATUS SET TO: "J" - JAIL (AR01) | AJA |
| 1/8/2026 | 2:03 PM | FILE | FILED ON: 01/08/2026 (AR01) | AJA |
| 1/8/2026 | 2:03 PM | ARRS | DEFENDANT ARRESTED ON: 01/08/2026 (AR01) | AJA |
| 1/8/2026 | 2:03 PM | BOND | BOND SET AT: $15000.00 (AR01) | AJA |
| 1/8/2026 | 2:03 PM | FILE | CHARGE 01: POSS FORGED INSTR 2N/#CNTS: 001 (AR01) | AJA |
| 1/8/2026 | 2:03 PM | W001 | ADDED: JUSTIN DODSON (AW21) | AJA |
| 1/8/2026 | 2:03 PM | W002 | ADDED: PATRICIA SMITH (AW21) | AJA |
| 1/8/2026 | 2:04 PM | EWARR | COMPLAINT, WARRANT, AND DEPOSITION | |
| 1/9/2026 | 8:20 AM | SCAN | CASE SCANNED STATUS SET TO: Y (AR10) | KES |
| 1/9/2026 | 8:20 AM | COMM | CASE ASSIGNED TO JJS - DID NOT REQUEST ATTY (AR10) | KES |
| 1/9/2026 | 8:21 AM | ADD1 | ADDR1 CHANGED FROM: 12300 HIGHWAY 59 (AR01) | KES |
| 1/9/2026 | 8:21 AM | CITY | HOME CITY CHANGED FROM: MIDLAND CITY (AR01) | KES |
| 1/9/2026 | 8:21 AM | STAT | STATUS CHANGED TO: "B" - BOND (AR01) | KES |
| 1/9/2026 | 8:21 AM | BNDT | BOND TYPE OF PROF BOND CD (AR01) | KES |
| 1/9/2026 | 8:21 AM | S001 | SURETY ADDED: A ABILITY BONDING LLC (AR01) | KES |
| 1/9/2026 | 8:21 AM | REDT | DEFENDANT RELEASED FROM JAIL: 01/08/2026 (AR01) | KES |
| 1/13/2026 | 3:35 PM | ESCAN | SCAN - FILED 1/9/2026 - BOND(S) | KRM |
| 1/13/2026 | 3:35 PM | ESCAN | SCAN - FILED 1/9/2026 - BOND(S) | KRM |
| 1/14/2026 | 1:22 PM | ESCAN | SCAN - FILED 1/14/2026 - COPY REQUEST | KES |
| 1/14/2026 | 2:36 PM | O001 | PAYMENT FREQUENCY SET TO: "L" (FE52) | KES |
| 1/14/2026 | 2:36 PM | D001 | PAYMENT DUE DATE SET TO: 02/12/2026 (FE52) | KES |
| 1/15/2026 | 10:05 AM | ESCAN | SCAN - FILED 1/9/2026 - AFFIDAVIT OF SUBSTANTIAL HARDSHIP | KES |
| 1/16/2026 | 9:33 AM | ESCAN | SCAN - FILED 1/9/2026 - BAIL BOND FEE TRANSMITTAL FORM | KRM |
| 1/20/2026 | 1:49 PM | S001 | ENFORCEMENT STATUS SET TO: "A" (FE52) | EDD |
| 1/20/2026 | 1:49 PM | S001 | ENF PLACEMENT STATUS SET TO: "H" (FE52) | EDD |
| 1/20/2026 | 1:49 PM | S001 | PAYMENT FREQUENCY SET TO: "M" (FE52) | EDD |
| 1/20/2026 | 1:49 PM | S001 | PAYMENT FREQUENCY SET TO: "L" (FE52) | EDD |
| 1/20/2026 | 1:49 PM | S001 | BAIL FEE PAID INDICATOR SET TO: N (FE52) | EDD |
| 1/20/2026 | 1:49 PM | S001 | BAIL FEE PAID INDICATOR SET TO: Y (FE52) | EDD |
| 1/20/2026 | 1:49 PM | S001 | PAYMENT DUE DATE SET TO: 02/18/2026 (FE52) | EDD |
| 1/21/2026 | 2:55 PM | ESCAN | SCAN - FILED 1/20/2026 - BAIL BOND FEE TRANSMITTAL FORM | EDD |
| 2/12/2026 | 3:13 PM | EMOT | D001-OTHER - MOTION TO REQUIRE PROOF OF AUTHORITY AND JURISDICTION WITH REQUEST FOR EXPEDITED RESPONSE FILED ON 2/12/2026 3:12 PM. | KES |
| 2/13/2026 | 10:01 AM | JEORDE | ORDER GENERATED FOR OTHER - MOTION TO REQUIRE PROOF OF AUTHORITY AND JURISDICTION WITH REQUEST FOR EXPEDITED RESPONSE - RENDERED & ENTERED: 2/13/2026 10:01:43 AM - ORDER | JA |
| 2/20/2026 | 1:29 PM | EMOT | D001-OTHER - PETITION FOR ABATEMENT, DEMAND FOR PRELIMINARY HEARING, OBJECTION TO DEFECTIVE NOTICE, INVOCATION OF CONSTITUTIONAL RIGHTS, REQUEST FOR RELIEF, NOTICE OF LIABILITY, NOTICE OF NON-ASSENT, NOTICE OF PRESERVATION OF RIGHTS FILED ON 2/20/2026 1:29 PM. | EDD |
| 2/26/2026 | 7:47 AM | JEORDE | ORDER GENERATED FOR OTHER - PETITION FOR ABATEMENT, DEMAND FOR PRELIMINARY HEARING, OBJECTION TO DEFECTIVE NOTICE, INVOCATION OF CONSTITUTIONAL RIGHTS, REQUEST FOR RELIEF, NOTICE OF LIABILITY, NOTICE OF NON-ASSENT, NOTICE OF PRESERVATION OF RIGHTS - RENDERED & ENTERED: 2/26/2026 7:47:37 AM - ORDER | JA |
| 3/2/2026 | 3:21 PM | EMOT | D001-PRELIMINARY HEARING FILED ON 3/2/2026 3:21 PM. | KES |

State of Alabama Houston County
I, Carla Woodall, Clerk of The Circuit, hereby
certify that this is a true correct co...
Case action Summary
N. Keat

| | | | | |
|---|---|---|---|---|
| 3/2/2026 | 3:37 PM | JEORDE | ORDER GENERATED FOR PRELIMINARY HEARING - RENDERED & ENTERED: 3/2/2026 3:37:11 PM - ORDER | JA |
| 3/2/2026 | 6:40 PM | DAT2 | SET FOR: PREL HEARING ON 04/10/2026 AT 0900A(AR10) | KES |
| 3/3/2026 | 9:04 AM | EMOT | C001-OTHER - MOTION TO DENY PRELIMINARY HEARING FILED. | BLU009 |
| 3/3/2026 | 1:06 PM | PRS2 | PROSECUTOR 2 ASSIGNED: BLUMBERG JARROD ABRAMS | AJA |
| 3/3/2026 | 1:06 PM | EMOT | C001-OTHER /DOCKETED | EDD |
| 3/4/2026 | 11:29 AM | JEORDE | ORDER GENERATED FOR OTHER - MOTION TO DENY PRELIMINARY HEARING - RENDERED & ENTERED: 3/4/2026 11:29:57 AM - ORDER | JA |
| 3/13/2026 | 4:05 PM | EMOT | D001-OTHER - MOTION FROM DEFENDANT FILED ON 3/13/2026 4:05 PM. | EDD |
| 3/13/2026 | 4:07 PM | EMOT | D001-OTHER - MOTION FROM DEFENDANT FILED ON 3/13/2026 4:07 PM. | EDD |
| 3/13/2026 | 4:08 PM | EMOT | D001-OTHER - MOTION FROM DEFENDANT FILED ON 3/13/2026 4:08 PM. | EDD |
| 3/13/2026 | 4:09 PM | EMOT | D001-OTHER - MOTION FROM DEFENDANT FILED ON 3/13/2026 4:09 PM. | EDD |
| 3/13/2026 | 4:11 PM | EMOT | D001-OTHER - MOTION FROM DEFENDANT FILED ON 3/13/2026 4:11 PM. | EDD |
| 3/13/2026 | 4:13 PM | EMOT | D001-OTHER - MOTION FROM DEFENDANT FILED ON 3/13/2026 4:13 PM. | EDD |
| 3/13/2026 | 4:14 PM | EMOT | D001-OTHER - MOTION FROM DEFENDANT FILED ON 3/13/2026 4:14 PM. | EDD |
| 3/13/2026 | 4:15 PM | EMOT | D001-OTHER - MOTION FROM DEFENDANT FILED ON 3/13/2026 4:15 PM. | EDD |
| 3/13/2026 | 4:17 PM | EMOT | D001-OTHER - MOTION FROM DEFENDANT FILED ON 3/13/2026 4:17 PM. | EDD |
| 3/13/2026 | 4:19 PM | EMOT | D001-OTHER - MOTION FROM DEFENDANT FILED ON 3/13/2026 4:19 PM. | EDD |
| 3/13/2026 | 4:20 PM | EMOT | D001-OTHER - MOTION FROM DEFENDANT FILED ON 3/13/2026 4:20 PM. | EDD |
| 3/13/2026 | 4:22 PM | EMOT | D001-OTHER - MOTION FROM DEFENDANT FILED ON 3/13/2026 4:22 PM. | EDD |
| 3/16/2026 | 9:27 AM | JEMOT | D001-OTHER /NO ACTION | JA |
| 3/16/2026 | 9:27 AM | JEMOT | D001-OTHER /NO ACTION | JA |
| 3/16/2026 | 9:27 AM | JEMOT | D001-OTHER /NO ACTION | JA |
| 3/16/2026 | 9:28 AM | JEMOT | D001-OTHER /NO ACTION | JA |
| 3/16/2026 | 9:28 AM | JEMOT | D001-OTHER /NO ACTION | JA |
| 3/16/2026 | 9:28 AM | JEMOT | D001-OTHER /NO ACTION | JA |
| 3/16/2026 | 9:28 AM | JEMOT | D001-OTHER /NO ACTION | JA |
| 3/16/2026 | 9:28 AM | JEMOT | D001-OTHER /NO ACTION | JA |
| 3/16/2026 | 9:28 AM | JEMOT | D001-OTHER /NO ACTION | JA |
| 3/16/2026 | 9:28 AM | JEMOT | D001-OTHER /NO ACTION | JA |
| 3/16/2026 | 9:28 AM | JEMOT | D001-OTHER /NO ACTION | JA |
| 3/16/2026 | 9:29 AM | JEMOT | D001-OTHER /NO ACTION | JA |
| 4/8/2026 | 3:39 PM | DJID | DISPOSITION JUDGE ID CHANGED FROM: TO: BHL | KES |
| 4/8/2026 | 3:39 PM | DISP | CHARGE 01: POSS FORGED INSTR 2/#CNTS: 001 (AR10) | KES |
| 4/8/2026 | 3:39 PM | DISP | CHARGE 01 DISPOSED BY: FWD/CERT GJ ON: 04/08/2026 | KES |
| 4/8/2026 | 3:39 PM | SENT | SENTENCE RECORD CREATED FOR CHARGE: 00 (AR10) | KES |
| 4/8/2026 | 3:39 PM | D001 | ENFORCEMENT STATUS SET TO: "N" (AR10) | KES |

*END OF THE REPORT*

# Ex. Y

SECOND AMENDED COMPLAINT - V4 COMPLIANT PER ORDER DOC. 14

TRANSCRIPT Jan 2, 2026 MEETING

You, Sheriff Valenza, Deputy Turner, NAACP Rep

Para 17, 54, 55

Proves Valenza had notice of Barnes/Dodson false affidavits 6 days before Jan 8 arrest

CASE: 1:26-cv-647-ECM-SMD

EXH. 4



IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

SOUTHERN DIVISION

NOBLE HALONA BEY,

Plaintiff,

CIVIL ACTION

VS.

FILE NO. 1:26-CV-647-ECM-SMD

CHRISTOPHER K. RICHARDSON, et al.,

Defendants.

* * * * * * * * * * * * * * *

COPY

* * * * * * * * * * * * * * *

TRANSCRIPT OF DIGITAL AUDIO/VIDEO, transcribed on behalf of the Plaintiff, pursuant to the stipulations set forth herein, transcribed by Jeana S. Boggs, Certified Court Reporter and Notary Public, commencing at approximately 9:29 a.m., Friday, January 2nd, 2026.

APPEARANCES

NOBLE HALONA BEY

SHERIFF DONALD VALENZA

OFFICER TURNER

FRANKLYN JONES, NAACP

MRS. BEY: Going to the Sheriff's Office. All right. Let me get my papers.

OFFICER TURNER: We want to get it right. Changes just enough to keep us all sick.

MRS. BEY: Okay.

OFFICER TURNER: I don't remember it being like this when I was a kid. (Inaudible). It has changed.

ELEVATOR VOICE: Second floor. Going down.

UNIDENTIFIED WOMAN: Mrs. Bey? Mrs. Bey?

MR. JONES: As I was saying, Mrs. Bey filed a complaint with us. And his mother and I sat down, you know, to try to find out which one. I couldn't see him.

SHERIFF VALENZA: Okay.

MR. JONES: And she shared some information and wanted to come down here and talk about it to see exactly what's

going on with her child.

SHERIFF VALENZA: Okay. No problem.

MR. JONES: And I know you've spoken with her before, and I've been told that.

SHERIFF VALENZA: Uh-huh.

MR. JONES: I talked -- we talked to the chaplains -- (inaudible).

SHERIFF VALENZA: Right.

MR. JONES: You know, and get this information and shared it. But we wanted to talk to you.

SHERIFF VALENZA: Sure.

MRS. BEY: Okay. I had a little speech, so I didn't want to be off.

Sheriff, I want to thank you for meeting us today. I'm here respectfully and in good faith. I'm not here to adjudicate the case or ask you to interview with the courts. I'm here to find -- the problem is that Josh's situation began with the law enforcement

level before any courtroom got involved. Courts only deal with officer -- whatever the officers bring them. And you got an Officer, Officer Barnes, that -- and I told you this before the last time I told you this, that -- that that my son was retaliated on when I told you that Officer Brandon Barnes was stacking charges on Joshua.

SHERIFF VALENZA: I remember you saying that.

MRS. BEY: Okay. So -- and I'm asking to look into this because I've already filed a lot of stuff on the record down at the County --

SHERIFF VALENZA: Okay.

MRS. BEY: -- and the proof because, on a couple of the charges that they had on my son on that SORNA, Barnes said -- on the complaint said that my son was gone out of the state for four days. My son was only gone for two days. And in order for it to be a crime, you have to be



gone for three days or more.

SHERIFF VALENZA: Wait. Wait. Wait. Back up. Help me out a little bit. Going out of the state, what breaks the laws?

MRS. BEY: A SORNA charge. A SORNA charge. Because, you know, SORNA when you go on that program, if you gone three days -- three or four --

SHERIFF VALENZA: Okay. So, he's under -- he's under --

MRS. BEY: Registered.

SHERIFF VALENZA: Like an umbrella?

MRS. BEY: Yes, sir.

SHERIFF VALENZA: Okay.

MRS. BEY: Okay. So, if you gone -- if you're gonna be gone three days or more out of the state, you have to let y'all know, you know, you let that department know.

SHERIFF VALENZA: Okay.

MRS. BEY: But Barnes -- my son



wasn't gone but two days.

SHERIFF VALENZA: Okay.

MRS. BEY: And I have the plane tickets. He was just gone two days.

SHERIFF VALENZA: Okay.

MRS. BEY: So, I -- we don't understand why would Barnes do that. Why would he go before the grand jury and write in his complaint that Joshua was gone four days?

SHERIFF VALENZA: Okay.

MRS. BEY: And that's what made it a crime. By him doing that --

SHERIFF VALENZA: Okay.

MRS. BEY: -- that's what made it a crime. So, that's frivolous crime. And that's why I've been trying to scream to you that what Barnes has done, even with that car, that car that's down there. Barnes -- when they went and approached those people's house at 3200 Springs -- (Inaudible).

SHERIFF VALENZA: Okay. Let



me -- let me -- let me stop you right there, now.

MRS. BEY: Okay.

SHERIFF VALENZA: When we get into about what he's charged with, I'm not going to discuss that with you. I've done told you --

MRS. BEY: Okay.

SHERIFF VALENZA: Wait. Wait. Wait. Wait. Listen.

MRS. BEY: Yes, sir.

SHERIFF VALENZA: Listen.

MRS. BEY: Yes, sir.

SHERIFF VALENZA: Once they -- and I told you before, if he -- whatever you said he was stacking, I don't know if he was stacking or not. But it's got to go to grand jury, and the grand jury is either going to indict or no bill. Okay? But he's got to have proof. He's got to have proof on those allegations against your son when he goes to grand jury.

MRS. BEY: He didn't.



SHERIFF VALENZA: Well, did they indict him?

MRS. BEY: They indicted him, but we don't know what he said to the grand jury. And that's why --

SHERIFF VALENZA: But I can't discuss that with you. I told you that.

MRS. BEY: I know. But what I'm saying -- and I'm here to say to you right now -- you are the supervisor over the -- over the deputies here. You're the supervisor. And it starts here because it's got to start with an officer writing a complaint and a report.

And in the complaint and in the reports is not true. It is not true what your officer has done. And so that -- that the weight goes back on you --

SHERIFF VALENZA: Well -- (inaudible).

MRS. BEY: -- because in law enforcement -- in order for a court case to go to court, it has to start here with



the complaint.

SHERIFF VALENZA: If you -- if you have the proof --

MRS. BEY: I do.

SHERIFF VALENZA: -- that's what you need to have when he goes to trial.

MRS. BEY: But what I was -- what I'm saying, it shouldn't be that office -- that's why he needs to be investigated, because it shouldn't be --

SHERIFF VALENZA: No, ma'am. Look, let me -- let me say it again. Okay?

I've mentioned to you before I cannot talk to you about the case, a violation of the Sixth Amendment, with an attorney or he's been indicted by grand jury.

MRS. BEY: No, we don't have an attorney.

SHERIFF VALENZA: If he's been indicted by grand jury, I'm not going to discuss the case.



MRS. BEY: Here is when -- I'm just -- because I have to put -- I have to put you on notice about your officer.

SHERIFF VALENZA: Well, you need to have all this --

MRS. BEY: This is the -- this is the plane ticket. And it's only for two days. It's not four days. But did he not know, because you did this investigation, that Josh also has a travel pass, because he -- he's -- he has to answer to Texas. He's -- he has to answer to Texas. The Texas judge gave him a travel pass that he can have a travel pass. Josh has a travel pass.

See, Barnes did not even look into that. He did not listen to that at all. And you -- you just don't give SORNA charges. What you have to do, you have to give them an opportunity -- You have to give them an opportunity to cure -- cure whatever that they're trying to charge him with, but Barnes did not do that. Barnes



just went straight and pressed charges on Joshua, which is not true at all. And here's the evidence right here. And it's all on the record. But what I'm saying to

you, it will be a lot of people that's being locked up all because --

SHERIFF VALENZA: This -- (Inaudible).

MRS. BEY: Right. This is -- this is it. Yeah. Yes. Right. Right. Even the search warrants. The search warrants -- the search warrants wasn't done until six days later on one incident, a day later on another incident. But the overall search warrant, because when they approached that house, they approached the house with guns to those people. They approached that. That car -- there that you're driving -- that you're driving that y'all were saying it was stolen. That car was not stolen. That car was not stolen.

SHERIFF VALENZA: Okay. I'm not going to discuss that.



MRS. BEY: My son is in jail for a year and three months now because the judge revoked his bond, all of unconstitutional search and seizure. And

the car was not even stolen. Because if the car was stolen, then, therefore, you wouldn't drive it because you would have to turn in to the rightful owner. And the rightful owner is not the person that y'all got on the complaint. The rightful owner is Progressive Insurance.

OFFICER TURNER: (Inaudible). I'm not a sheriff.

MRS. BEY: Yes, you can ask questions.

UNIDENTIFIED MAN: I want to try to explain something maybe a little better. The problem we have with what's going on here is you understand, and we understand that. But we can't look into that complaint until your son goes to court, and the Court makes a judgment. Because there's what you're talking about



with constitutional things and constitutional things being violated. If we sit here and discuss that case with you, we're not gonna hear --

MRS. BEY: Yeah, yeah.

UNIDENTIFIED MAN: Does that make sense?

MRS. BEY: Uh-huh. You don't have to discuss it with -- Baby, I don't even say if you gotta discuss with me, but I have to. What I have to do, because this is what I always do if someone has violated the Constitution. If someone has violated the Constitution, what you have to do is we have to do as a community, we have to come together, and I have to let the Sheriff know.

MR. JONES: We good.

MRS. BEY: Right.

MR. JONES: He goes to court.

MRS. BEY: Right. And so, he has to be put on notice because it ain't gonna be like that the Sheriff don't know



because I brought it to his attention. NAACP has joined me because they looked over the paperwork, and they see where the violation is. And the thing of this, I'm just putting the Sheriff on notice so he

can investigate this officer.

No one here is above the law. We have good officers that really want to clean the community up. And then we got officers that got an ego chip on their shoulder. And they -- they so busy on trying to make sure this person goes to jail, that they -- they sloppy with it. And that's what's done took place here.

SHERIFF VALENZA: Okay. I can -- I will say this: I'm not going to get into it.

MRS. BEY: Yes, sir.

SHERIFF VALENZA: That vehicle was at one time stolen.

MRS. BEY: It wasn't. It wasn't the date of the arrest, though. It was not. The insurance -- Progressive



Insurance paid that claim off. And then the insurance -- this is in the forfeiture paper. It's in the forfeiture paperwork. It speaks for itself. The paperwork that the courts got speaks for itself.

The insurance, Progressive, was

to take that claim out. When Progressive Insurance paid that claim out, they got a new salvage title. They had got a new salvage title. So, the car became with a new identity.

SHERIFF VALENZA: Okay. I know the other day -- I know the other day --

MRS. BEY: I got that on -- I got that on y'all's paperwork. Yeah. I got that. This in here. I got that. It's on the record. I put it back on the record for y'all to see what the DA put in the record. I'm going by y'all's record. And these are things I know for a fact because I'm not gonna come sit before you if I don't know things for a fact.

And that's all I'm saying to you



today, sir. Just giving you notice that your officer has done -- he has violated Joshua's rights. And I think it is your duty to look into it instead of being on the defense mode. Because, you know, we even have children that, you know, we say,

oh, my child won't do this, oh, my child won't do that. It's the same as you with your officers. We can't speak what someone would do 24 hours a day. We cannot.

And if your officer has made a mistake, we've got to fix it. We can't cover it up and put a band aid on it.

SHERIFF VALENZA: Okay. Well, I --

MRS. BEY: It is what it is.

SHERIFF VALENZA: Okay. That's like I told you before, it goes to grand jury.

MRS. BEY: But it starts here.

SHERIFF VALENZA: It starts, but it goes to grand jury. That's Alabama



law. You cannot -- On all felonies that go to grand jury, unless they plea before grand jury. And I've only heard of one person in my whole career ever done that.

MRS. BEY: Christopher Summerlin
.

SHERIFF VALENZA: No.

MRS. BEY: No. He did.

SHERIFF VALENZA: Oh, he didn't.

MRS. BEY: Yes, he did.

SHERIFF VALENZA: Christopher Summerlin?

MRS. BEY: Well, Christopher Summerlin is the officer that you had. He pled guilty. He pled guilty to pretrial diversion before -- I got his paperwork.

SHERIFF VALENZA: I arrested him.

MRS. BEY: I know. I got his paperwork.

SHERIFF VALENZA: I didn't agree to the pretrial.

MRS. BEY: I know, but I got his



paperwork. He --

SHERIFF VALENZA: (Inaudible).

MRS. BEY: He pled guilty before a grand jury.

SHERIFF VALENZA: Okay. That doesn't have anything to do --

MRS. BEY: (Inaudible) -- that

did that because I got his paperwork.

SHERIFF VALENZA: Where -- what happened to him?

MRS. BEY: He pled guilty. He pled guilty. I mean, because he robbed the money off the robber.

SHERIFF VALENZA: Because he was dirty.

MRS. BEY: Yes, he was dirty.

SHERIFF VALENZA: And I arrested him.

MRS. BEY: Yeah, you told me he was dirty and going on those streets. You told me that. Yeah.

OFFICER TURNER: What was your last comment?



SHERIFF VALENZA: Sir?

OFFICER TURNER: You're going to tell us something. You're trying to tell us something.

SHERIFF VALENZA: Well, he's got to prove -- all these allegations he has to prove it. And if there is something that is fictitious in it, take it to civil

court and sue him. Sue the department.

MRS. BEY: No, it's not about just suing the department. He has to be -- If he has done something to cause my son to sit in jail for a year and three months, he's got to be accountable for his wrongdoing. If he falsified paperwork --

SHERIFF VALENZA: If he falsified paperwork --

MRS. BEY: And he did.

SHERIFF VALENZA: -- you're right.

MRS. BEY: And, sir, he did. And I have --

SHERIFF VALENZA: Well, I don't



know he did.

MRS. BEY: Yes, sir.

SHERIFF VALENZA: And if he went to grand jury -- I'm saying, if he went to grand jury and they indicted him, he has got to prove this in court. And in court, a lot of stuff will come out that we don't discuss. It's nothing hidden. There's

nothing illegal. But we don't discuss techniques and -- and equipment that he used to prove their case -- p.

MRS. BEY: Yes, sir.

SHERIFF VALENZA: -- is what I'm saying.

MRS. BEY: Yes, sir.

SHERIFF VALENZA: And all that's going to come out.

UNIDENTIFIED MAN: What you wanting us to do, there's not a problem. The Sheriff will be glad to do it. But we have to wait until this court case is finalized, and that's done before he can look into it. Because if he looks at all



of your stuff now, discusses it with you --

MRS. BEY: He don't have to discuss it with me.

OFFICER TURNER: Yeah. You're the only person that's got all this proof. True?

MRS. BEY: Yes, sir. No, it's on -- it's on the record at the court.

OFFICER TURNER: We can't go digging into that until this case is over with. Otherwise, we're doing exactly what you -- you're saying that we are violating his constitutional rights. Everything has to be done between -- and I understand he doesn't have an attorney.

MRS. BEY: Not right now.

OFFICER TURNER: But once he's indicted, he's gonna have to have an attorney.

MRS. BEY: Oh, yeah, I was gonna get him an attorney, but first I had wanted to put his facts on the record



before I got an attorney.

OFFICER TURNER: But everything's got to be done between that attorney and the DA's office, and that judge in that case. Once all that's done, if it doesn't go the way you want it to, once it's done, then you can bring all that stuff back up and say, look. But right now we can't because of the law.

OFFICER TURNER: What's that date, the court date?

MRS. BEY: On the 8th. He's got arraignment on the 8th.

OFFICER TURNER: Of January?

MRS. BEY: Yes, sir. I'm going to pay for the lawyer. I didn't want to pay --

SHERIFF VALENZA: He's got -- he's got what on the 8th?

MRS. BEY: Arraignment.

SHERIFF VALENZA: Arraignment? He's been indicted.

MRS. BEY: But I'm trying to

24

tell you, this stuff is so crazy of what's going on. That's why I'm telling you he hasn't had --

SHERIFF VALENZA: (Inaudible) -- system.

MRS. BEY: No, he has not had -- no. He has not had no -- he has not had no preliminary hearing. The only preliminary hearing he done had it was when Officer Barnes got on for that car

outside.

SHERIFF VALENZA: Okay. Do you -- Mrs. Bey, do you understand -- and I know you do -- the court system. The arraignment is you plead guilty or not guilty.

MRS. BEY: I know.

SHERIFF VALENZA: The preliminary is whether or not there was probable cause to go to grand jury.

MRS. BEY: I know.

SHERIFF VALENZA: And if you don't have a preliminary, it'll go to



grand jury.

MRS. BEY: He didn't -- he -- he was not -- they didn't give him no preliminary hearings. Only except for that car right there when Officer Barnes told a lie and said he had a consent letter from the owners of that home where y'all got that car from in the backyard. That's the only preliminary hearing that he done had on any of the cases. He ain't

had one.

UNIDENTIFIED MAN: What did the Court ask him to do on the 8thq.

MRS. BEY: (Inaudible). But what happened was, the reason why he was not having the arraignment after a year and three months, and all that stuff, is because while he was inside, Officer Barnes kept stacking charges on him. They kept stacking charges on him. And then the day I came and saw you and told you that the car wasn't stolen, oh, some officers went and got my son out his jail



cell, and they went and swab his mouth a year, two months later. They went and swabbed his mouth. And then they took him down, and nine months later talking about they gonna re-fingerprint him. Told him they lost a fingerprint. You can't lose a fingerprint.

SHERIFF VALENZA: We fingerprint. When you get arrested and you get indicted --

MRS. BEY: They said they lost

them.

SHERIFF VALENZA: -- that is another charge. That means that's probable cause there with. You do get re-fingerprinted again on an --

MRS. BEY: I talked to Mrs. -- I talked to Mrs. -- I talked to the jail lady. She said they said they lost his fingerprints. I have her on recording. She said that his fingerprints was lost so he has to be re-fingerprinted.

SHERIFF VALENZA: No.



MRS. BEY: And I got a two-hour recording. I got a two-hour recording of someone that works over in the jail, because she said that that was the talk of the jail of them saying that they said they lost Josh's fingerprints. She said but you can't lose Joshua's fingerprints. You can't, because how the computer -- the fingerprint thing. I'm just telling you what's going to happen. This has been just a big coverup.

SHERIFF VALENZA: Okay. One thing you're talking about him getting rearrested is an indictment. Once you've been indicted --

MRS. BEY: And he had a false hold on him out of Lee County. Joshua has never been to Lee County.

SHERIFF VALENZA: I looked into that, and that has been dismissed, hasn't it?

MRS. BEY: I got that dismissed.

SHERIFF VALENZA: Okay.



MRS. BEY: I got it dismissed by calling the Lee County Sheriff's Department, and I have her recorded --

SHERIFF VALENZA: When you --

MRS. BEY: -- because she said: "Your son has never been in our system. We don't understand. We do not understand how this came about. Your son is not in our database. We don't understand. We -- it ain't about it's dismissed." It got taken out because it was never -- he'd never been to Lee County before.

So, who put that fake hold on Joshua? And guess what I found out, it was on him for six months.

SHERIFF VALENZA: Lee County --

MRS. BEY: It was on him for six months. And if the lawyer hadn't told the other lawyer, and that lawyer told me, that's when I started calling around, like, Josh, have you ever been to a Lee County? He said, "No. Where's Lee County?"



So, I'm calling around, you know. And the lady -- I finally talked to the lady over there at the Sheriff's Department. She said, "Sweetheart, I don't know what's going on, but this is -- this had to be some kind of underhanded thing because your son is not in our database. We don't have a hold on Joshua Bighems."

So, somebody had to manage that fake hold. Somebody had to manually put that fake hold on Joshua to hold his body

in there. Because they try to use the excuse that Josh had a hold in Texas; Lee doesn't. He has a bond out of Texas.

So, Josh is in jail now falsely -- I mean, what you call it? False arrest or false imprisonment on that Lee County hold. False imprisonment on -- on it all.

SHERIFF VALENZA: That's not false imprisonment, Mrs. Bey.

MRS. BEY: Okay.



SHERIFF VALENZA: That is -- they say they had a -- I remember calling them.

MRS. BEY: They didn't have. My son has never been over there. I talked to the Sheriff's Department myself, and I have her recorded. And I talked to her plenty of times. I even talked to Mr. Lanier (phonetic) over here at the County records. I've talked to him, too. There was no -- someone put the hold from -- the hold was from your department -- I mean, from the Houston County Jail. So...

SHERIFF VALENZA: It is -- (inaudible).

MRS. BEY: Yes. I'm gonna -- I'm gonna ask for an investigation with the grand jury, and I'm gonna subpoena the records from Lee County and Houston County.

SHERIFF VALENZA: Okay.

MRS. BEY: I mean, what I'm saying -- all I'm saying is, is that I



want everybody to get along. But if this is some kind of big coverup to just keep Joshua in jail, then it should be -- because what if it was your child? What if it was your child?

SHERIFF VALENZA: I don't play that game.

MRS. BEY: But, see, that's what I'm saying. What if it was your child? You'll be looking into it too.

SHERIFF VALENZA: You would, and you have a right to look into it if that's what you --

MRS. BEY: Yeah, because it's not adding up. It's not making sense.

SHERIFF VALENZA: But you've got to prove --

MRS. BEY: Because if a car was stolen, then it should be given to the rightful owner. It should be -- if a car was stolen, it should be given to the rightful owner. I have more information, but I'm not going to discuss it. But I



have very, very much more information.

So, sir, all we just asking for you to do is -- I -- I respect you a lot. I do. I respect you a lot. And I just ask for you to look into it. Don't let what an officer would do make the whole department look bad because you got some great officers. But if you got an officer that got a chip on his shoulder and he -- and they're going overboard and they're being overzealous, it's even in the court records of a lawyer stating that your officer is overzealous.

SHERIFF VALENZA: Wait. Wait.

Which record is that in?

MRS. BEY: It's in a transcript. I -- I can give it to you.

SHERIFF VALENZA: Who made that comment?

MRS. BEY: Lloyd Raynor (phonetic) -- Clifton Raynor.

SHERIFF VALENZA: And he said what, now?



MRS. BEY: That your officer is overzealous. That means that he -- he does too much on overcharging people. Officer Barnes.

SHERIFF VALENZA: Well, Officer Brandon Barnes. As I said earlier, it'll all come out. It'll all come up. And I don't know why you don't have him a lawyer.

MRS. BEY: Oh, no, no, no. Because I understand what's going on. So, I had to file on the record. All this is filing on the record down there right now. It's all Joshua's evidence. And I had to

do what a lawyer will not do because everybody knows everybody.

So, in order to free my son, I had to put the true and rightful filings on there of what a lawyer wouldn't do. So, now, that I have put the stuff on the record. Now, Monday, I done laid the ground for my child.

(At which time there was a



brief interruption of a phone ringing.)

MRS. BEY: But it's a lot of more people going to come and support because, you know, I got my restaurant --

(At which time there was a brief interruption.)

MRS. BEY: -- community because Joshua is at the top in the community that did, you know, big shows with the celebrities and stuff like that. They would keep asking me: Why are they still holding your son? People that done murdered out here. They are -- they -- they letting them go giving them bonds.

People are doing all this other stuff out here that's doing more heinous crimes. Why are they still holding your son in jail like this?

That's because, on the record, they was making it seem as if my son was getting rearrested and getting bonded out, and rearrested, bonded out. I got all



that evidence. I don't understand this. How can people hate people that bad to try to do that? I mean, I know I'm done. I have -- it's on the record. I put it all on the record so it can't be hidden.

Now, my next step is to go to the Attorney General. Then, if I can't get nothing done, I'm going to the DOJ. But what I'm trying to do, all I'm saying is doing, because I really respect you, I really do. And I'm just hoping that you want to do the right thing so it won't escalate.

SHERIFF VALENZA: If I see there's been injustice done -- you know,

you know me. I've been here 46 years.
You know me. You know me from the past.
I don't put up with that. And you know --

MRS. BEY: Well, we gonna see, because right now, times are different and it's a lot of pressure.

SHERIFF VALENZA: Time is different -- (inaudible).



MRS. BEY: I don't talk to different lawyers, right? And I don't talk to them. And it's like some of them be pushing back, like, ooh, Josh got a lot of constitutional issues. That means that he has been done wrong.

So, they -- some of them are scared -- they're scared to come against the people that's done done him wrong, because these are the people that they know. But now that the talk has become so great amongst the lawyers here in Dothan, they don't understand why Josh is being treated like this. It is wrong.

And then when I came to you that night to tell you about this Officer Kelly

Holland, he went to try to approach my son aggressively.

SHERIFF VALENZA: Who?

MRS. BEY: Kelly Holland. He works at the jail. That same night I came and gave a report to you. Kelly Holland. He went and approached my son: "Get off



the phone. Get off the MF phone. Get off of it now." He just walked up to him doing that. And then he was like he was trying to provoke my son, you know?

And then my son said, "What -- what you mean get off the phone? We don't go into 5:30."

He said, "You heard what I said. Get off the MF phone."

SHERIFF VALENZA: Did you file something on that?

MRS. BEY: Yes. My son and --

SHERIFF VALENZA: Did you not -- did your son file? Well, they all -- they ought to look into it and --

MRS. BEY: Check this out.

Check this out. So, how about the Officer Kelly Holland, he -- he gave a report saying that my son tried to strike at him and my son never did.

SHERIFF VALENZA: We have videos.

MRS. BEY: I know. I know.



Listen. Listen. So, some of the people that work there, they said they didn't believe that about my son because my son is a mannerable child down there. He's -- Not a child, but a man. Say he's very respectful. He's mannerable. So, they asked for the video to be --

SHERIFF VALENZA: Who asked?

MRS. BEY: I can't say that, sir. They asked --

SHERIFF VALENZA: Is it somebody in our department?

MRS. BEY: Oh, yes, sir. At the County jail. But they asked --

SHERIFF VALENZA: Why didn't you tell me?

MRS. BEY: I cannot do that,

sir, because I promised them I would not do that.

SHERIFF VALENZA: Well, how do you want me to look in this stuff?

MRS. BEY: But go look at the film and go look up the writeup about it.



SHERIFF VALENZA: Look at the film. What day was it?

MRS. BEY: July 17th. Well, I can call you back with the date, but I think it was July 7th or 17th. I got it wrote down because I got affidavits from the wife because the wife was on the phone with Josh because she called me, she said, "You better get down there to the jail and see if Josh is okay."

I hurried up and got down there and people that came down said, "Well, the officer is trying to say that Josh swung on him."

"All right. What?" So, I said, "Is my son okay?"

She said, "He's okay physically,

but he's not okay mentally." So, whatever the officer -- I'm telling you what the officer at the jail said.

SHERIFF VALENZA: All right.

MRS. BEY: So, they -- the people in the jail wrote the affidavit



because the officer was turning his camera off and on.

SHERIFF VALENZA: Do you have a copy of the affidavits?

MRS. BEY: Yes, sir.

SHERIFF VALENZA: Can I see it?

MRS. BEY: I don't know if I got that with me.

SHERIFF VALENZA: Can I see it?

MRS. BEY: I don't know if I got that with me, but I promise you I'll bring it back because I brought a copy -- I gave it to your secretary downstairs, and she stamped it that she received it, whoever the lady is downstairs, and she was supposed to gave it to you in July. She --

SHERIFF VALENZA: She gave me

something about someone.

MRS. BEY: Yeah, about some of -- but I gave you something about -- I -- I didn't give it to you, Baby. I gave it to the lady downstairs.



SHERIFF VALENZA: Okay.

MRS. BEY: And then she said she was going to give it to you, but she signed it saying that she received it.

SHERIFF VALENZA: Well, I assure you -- and I've disciplined correction deputies on being wrong for -- towards inmates. That don't happen very often. But when they tell them, you know, your time is up, you got to get off the phone, you got to get off the phone. I mean, that's just -- other ones -- other ones have time to get to use the phone also.

So, I don't know. I don't -- I --

MRS. BEY: It's in the report. But go watch the video. And so -- so, when they watched the video, they fronted

the officer saying, well, why would you give a report saying he swung on you? That's not what happened.

So, it's supposed to went up to the other commander. It's supposed to --



SHERIFF VALENZA: Did he get a charge out of that?

MRS. BEY: I don't --

SHERIFF VALENZA: Your son?

MRS. BEY: No, because they watched the film, and the officer was lying. He got caught in a lie. And so, it's supposed to have been -- he's supposed to be getting in trouble, but the officer supposed to have been Kelly Hollandley.

SHERIFF VALENZA: What was the officer's name?

MRS. BEY: Kelly Holland.

SHERIFF VALENZA: And what day was that?

MRS. BEY: I think it was July 7th or July 17th. But I got it, and I -- if you -- I can leave the message. But

she got the paper. She supposed to have gave it to you, the affidavit.

OFFICER TURNER: Have you got a copy?



MRS. BEY: Yes, but I'm going to get a copy, and I'll bring it back probably between today or a Monday. But you got the copy because the lady got it from downstairs.

SHERIFF VALENZA: Well, if you give it to the lady downstairs, I remember something about Summerlin (phonetic).

MRS. BEY: Yeah, about Summerlin had -- Summerlin had went and kidnapped this -- well, you asked me about Summerlin.

SHERIFF VALENZA: We're not going there again, but that's already been --

MRS. BEY: Oh, no, no, no, no. It's gonna be opened back up because the lady's gonna come back for it. But I'm just saying it's just so much to this

story. I can't help it. It is.

It's crazy. It's crazy. It's crazy. It just goes on and on. Seems like it's just crazy, and I can't help



that. But that -- that it is what it is.

And I just want us to work together to make things right. That's what I'm asking. That's what I'm asking. Just think about it. If it was your child, you would be doing looking into it the same way. And that's all I'm asking you to do.

SHERIFF VALENZA: I will. I'll look. And if there's any kind of mis -- misdoings, I deal with it.

MRS. BEY: Yes, sir.

SHERIFF VALENZA: But it's also like I told you, like Turner said, until it goes to trial, once it went to grand jury, I don't know what was said in the grand jury either.

MRS. BEY: I'm gonna have that investigated.

SHERIFF VALENZA: Well, unless

something's changed, my whole entire career, I don't ever recall a grand jury being recorded.



MRS. BEY: I said investigate it.

SHERIFF VALENZA: Well, I mean, you're looking for a recording of what was said is what you're talking about.

MRS. BEY: Whatever it comes out to be. But this is the groundwork that you have to do when you want to get down to the bottom of things. Because I already have his complaint of what he said in his complaint, and I got a certified copy from the Court -- and in a certified copy from the court.

SHERIFF VALENZA: Copy of the court of what?

MRS. BEY: Copy of what Barnes put in there, what he said. I have that copy of his complaint of what he's saying that my son was gone for four days, and that's not true. But even though he

got -- he got the information out of a phone that he didn't have a search warrant for. He didn't have that search warrant



for that phone. He ended up getting a search warrant later after the fact. And that's called post hoc. You can't do that.

SHERIFF VALENZA: You know how long a search warrant is good for? I mean, do you?

MRS. BEY: No. I'm saying all search warrants was -- was all search. There was no search warrants. This is what I'm trying to tell you. There was no search warrants. They didn't get no search warrants until six days later after the fact. And you can't post hoc like that. You can't retroact like that.

SHERIFF VALENZA: No.

MRS. BEY: Yeah. Right. And that's what he did.

SHERIFF VALENZA: He's gonna have to prove it.

MRS. BEY: Yes. Yeah, I got it

all right here.

SHERIFF VALENZA: Okay.



MRS. BEY: Yeah. And I put it all on the record. That's why I say you can pay lawyers $15,000 of stuff that you can do yourself. And so, it's -- it's all about what's on the record. And all I did, y'all, was put the truth on the record because a lawyer will fail you.

SHERIFF VALENZA: Okay.

MRS. BEY: Okay. Let's work together. I mean, you know, just work together. I know sometimes I can be a little bit overbearing because, you know, it's my child. But put all emotions to the side, let's work together. Do the right thing. The right thing. That's all I ask.

SHERIFF VALENZA: If I see wrongdoing --

MRS. BEY: Yes, sir.

SHERIFF VALENZA: -- I assure you I'll address it.

MRS. BEY: Yes, sir.

SHERIFF VALENZA: And I can show



you throughout the years, from when I started, when I left the ranks, even as lieutenant, I've taken down dirty ones.

MRS. BEY: Yes, sir.

SHERIFF VALENZA: And I don't put up with it.

MRS. BEY: Yes, sir. And you don't want no officer to be done did some paperwork and cause the whole department to look bad. Are you seeing what I'm saying to you? You don't want no officer to be done did some falsifying paperwork or gave some falsifying statement and you thinking one thing because you trusting that officer. But when it comes down to it, the officer has done wrong.

SHERIFF VALENZA: Well, that officer gets in front of the Court and testifies to something other than what he testified in the grand jury, they're going to get him for perjury.

MRS. BEY: That's right. And

that's what he done did. That's right.



That's right, sir. And you're right. And that's why he --

SHERIFF VALENZA: He passed the case. We'll wait and see what he says in court and see if they go after the perjury charge.

MRS. BEY: Yes, sir.

SHERIFF VALENZA: Anything else?

MRS. BEY: That's it.

UNIDENTIFIED MAN: Thank you so much.

SHERIFF VALENZA: Yes, sir.

MRS. BEY: Oh, yeah. One of the charges was that he put -- because, like I said, he was stacking the charges on him while he was locked up. So, one of the charges said that he didn't report for the month of November. But how you going to report for the month of November, he had been locked up since October.

SHERIFF VALENZA: Who said that?

MRS. BEY: Barnes. And he knew

my son was locked up. So, how you gonna



put a charge on him saying he didn't report in November when you know he had been locked up since October, because you're the one that keep putting the charges on him?

SHERIFF VALENZA: Okay. Well, he's got -- he's got to prove it.

MRS. BEY: He can't prove it because the boy was in the jail --

SHERIFF VALENZA: We haven't gone to trial yet. I'm just saying. He's got to prove it.

MRS. BEY: Yes, sir.

SHERIFF VALENZA: Right, wrong, in between.

MRS. BEY: Yes, sir.

SHERIFF VALENZA: If he made an allegation, if he charged him, he's got to prove it. I mean, that's on anybody. And I agree with that.

MRS. BEY: Yes, sir.

SHERIFF VALENZA: That's your Constitutional right.

MRS. BEY: Yes, sir.

SHERIFF VALENZA: So...

MRS. BEY: And I thank y'all. I thank y'all so much. I thank you, Mr. Thomas. Thank you.

SHERIFF VALENZA: Thank you.

MRS. BEY: And I'll get that copy of that affidavit back to you. But you should have a copy. But I'm still gonna just get it for you because I know if months -- if you don't pass by, if you like me, I don't know where the Hell that paper at. But, you know, but I get that ticket by Monday -- I'll get that to you at least by Monday.

SHERIFF VALENZA: Well, like I said, whatever he's charged, he's gonna have to prove it. If he can't prove it, the jury is not going to convict him. Then we can look at stuff.

MRS. BEY: Yes, sir.

SHERIFF VALENZA: Okay?

MRS. BEY: Yes, sir. Y'all have

a nice day too.

ELEVATOR VOICE: Going down.

UNIDENTIFIED MAN: Disappointed and happy and just mix of emotion. That's some awesome stuff. These freshman kids coming out and playing.

MRS. BEY: Alabama just ain't doing it no more, like, when that other guy was there.

UNIDENTIFIED MAN: Alabama will be back in a minute.

ELEVATOR VOICE: Going up.

(Inaudible speaking).

MRS. BEY: First of all, you and I went to the Mayor. I said I'm going to stop making y'all know I wanted that thing. Let's see what's right. You know what I'm saying? See before it gets to the court. You understand what I'm saying? That's right. That's right.

So, if you got officers that's not writing any right in the complaint and

falsifying, should nobody have to go through the hardship of going to jail, sitting in there a long time and then have to go pay money to bond out. (Inaudible). That's not right.

(Inaudible speaking).

(Conclusion of digital audio recording.)

REPORTER'S CERTIFICATE

STATE OF ALABAMA

TALLAPOOSA COUNTY

I, Jeana S. Boggs, Certified Professional Reporter and Notary Public in and for the State of Alabama at Large, do hereby certify on Friday, January 2nd, 2026, that I transcribed the digital audio/video recording, in the matter of NOBLE HALONA BEY, Plaintiff, versus CHRISTOPHER K. RICHARDSON,, Defendant, File No. 1:26-CV-647-ECM-SMD, now pending in the UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION; that the foregoing colloquies, statements, questions and answers thereto were reduced to 53 typewritten pages under my direction and supervision; that the transcription is a true and accurate transcription of the digital audio/video set out herein to the best of my hearing ability.

I further certify that I am neither of relative, employee, attorney or counsel of any of the parties, nor am I a relative or employee of such attorney or counsel, nor am I financially interested

in the results thereof. All rates charged are usual and customary.

I further certify that I am duly licensed by the Alabama Board of Court Reporting as a Certified Court Reporter as evidenced by the ABCR number following my name found below.

This the 7th day of September, 2026, in the year of our Lord.

______________________________
Jeana S. Boggs, CCR
ABCR NO. 7, 9/30/2026
Certified Court Reporter and
Notary Public
Commission expires: 8/11/2030

(C) Copyright 2026, Boggs Reporting & Video, LLC. All rights reserved. No portion of this document may be reproduced without written consent of Boggs Reporting & Video, LLC.

# Ex. Commission Photo

SECOND AMENDED COMPLAINT - V4 COMPLIANT PER ORDER DOC. 14

HOUSTON COUNTY COMMISSION BOARD MEETING

Oct 23, 2025

Para 16

Plaintiff put Commission on notice of false affidavits

CASE: 1:26-cv-647-ECM-SMD

DAte 10-23-25 ADMINISTRATIVE Houston County Commission
Noble Nalona Bey putting Houston County Comission Meeting
on Notice of Joshua Bighems



DAte 10-23-25


Houston County Commission Meeting
@houstoncountycommission-do7455
27:20 / 36:02
And then you
More videos
commission_chambers@countyofhouston.rooms.webex.com

# Ex. I

SECOND AMENDED COMPLAINT - V4 COMPLIANT PER ORDER DOC. 14

ADA REQUEST - Aug 12, 2026 - DENIED WITHOUT FINDINGS

Para 28, 30

Submitted to Steensland after private disclosure

CASE: 1:26-cv-647-ECM-SMD

EXH. M

DOCUMENT 15

ELECTRONICALLY FILED
7/22/2026 12:05 PM
38-CC-2026-001133.00
CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CARLA H. WOODALL, CLERK

IN THE CIRCUIT COURT OF HOUSTON COU[NTY]

STATE OF ALABAMA

V.

BEY NOBLE HALONA LATONYA MYL
Defendant.

) Case No.: CC-2026-001133.00

**ORDER**

ADA ACCOMMODATION REQUEST filed by BEY NOBLE HALONA LATONYA will be heard at the Arraignment set in this matter on August 12, 2026 at 1:30 PM.

The Arraignment was originally set for July 15, 2026. The Court granted Defendant's Motion To Continue which stated that Defendant was scheduled to attend a continuing education classes. Defendant shall have ten (10) days to file proof of attendance from the provider confirming Defendant's attendance on said date.

In her Motion To Continue, Defendant asserts that she has not received timely notice of court dates from the Clerk's Office via US Mail. Defendant shall have ten (10) days to execute the required documents so that she will receive "e-Notifications" from the Clerk's Office as to Court dates and filings in her cases.

**DONE this 22nd day of July, 2026.**

**/s/ M. JOHN STEENSLAND III**
**CIRCUIT JUDGE**

Extra EEK 2nd Request to Hon Jo Steensland for emergency ADA issues

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

FILED

AUG 10 2026

Carla Woodall
Carla Woodall, Clerk
Houston County, AL

STATE OF ALABAMA,
Plaintiff,
v.
BEY, NOBLE HALONA,
Defendant.

Case Nos.: CC-2026-001133.00 through CC-2026-001148.00

EMERGENCY REQUEST FOR REASONABLE ACCOMMODATIONS
UNDER THE AMERICANS WITH DISABILITIES ACT
AND REQUEST FOR WRITTEN RULING PRIOR TO AUGUST 12, 2026 HEARING

Defendant Noble Halona Bey, proceeding pro se, respectfully files this EMERGENCY request for reasonable accommodations pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Rule 1.100 of the Alabama Judicial System ADA Policy.

**EMERGENCY BASIS**: A hearing is set for August 12, 2026. Defendant cannot meaningfully participate without accommodations and requires a written ruling prior to said hearing date.

1. **BASIS FOR REQUEST**: Defendant is a qualified individual with a disability under the ADA due to conditions documented by the Social Security Administration. Defendant receives Social Security Disability Insurance. The disability substantially limits major life activities including concentration, stamina, mobility, and the ability to participate in prolonged in-person proceedings without accommodation.

2. **SPECIFIC ACCOMMODATIONS REQUESTED**: Pursuant to 28 C.F.R. § 35.160, Defendant requests the following reasonable accommodations for the August 12, 2026 hearing and all future proceedings in the above-captioned cases:

a. **Remote Appearance**: Leave to appear via Zoom or other video conference for the August 12, 2026 hearing and all future hearings due to mobility issues, stamina limitations, and to prevent undue hardship from travel and exposure to courtroom stressors.

b. **Audio Recording**: Permission to create an audio recording of all proceedings for Defendant's personal use to accommodate memory and processing limitations. In the alternative, Defendant requests the Court provide official transcripts at no cost due to indigency pursuant to *Griffin v. Illinois*, 351 U.S. 12 (1956).

2nd page of ADA request to Hon John Steele

c. **Frequent Breaks**: A break every 30 minutes during any proceeding exceeding one hour to accommodate medical needs and cognitive fatigue.

d. **Advocate/Support Person**: Leave for Defendant to have a non-attorney advocate or support person present at counsel table and to assist Defendant with documents, note-taking, and communication during proceedings. Said advocate will not engage in the practice of law or speak for Defendant unless permitted by the Court.

e. **Advance Written Rulings**: A written ruling on this ADA request no later than August 11, 2026, and on all future motions at least 5 business days prior to any hearing to allow Defendant adequate time to process and prepare, as required for meaningful access and due process.

3. **REQUEST FOR WRITTEN RULING PRIOR TO AUGUST 12, 2026**: Defendant specifically requests a written ruling on this ADA request BEFORE the August 12, 2026 hearing. Proceeding without accommodations violates Defendant's rights under the ADA and the 6th and 14th Amendments. *See Tennessee v. Lane*, 541 U.S. 509 (2004); *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001). Defendant reserves the right to refuse to proceed on August 12, 2026 if accommodations are not granted in writing.

4. **NO UNDUE BURDEN**: The requested accommodations do not fundamentally alter the nature of criminal proceedings, impose an undue financial or administrative burden, or cause a direct threat. Zoom hearings are routinely used by Alabama courts. Recording for personal use by a pro se defendant is necessary to ensure due process.

5. **INDIGENCY**: Defendant is indigent as established by Social Security disability status and prior filings. Defendant cannot afford to travel repeatedly or pay for transcripts without accommodation.

WHEREFORE, Defendant respectfully requests that this Court:

1. Grant this Emergency Request for ADA Accommodations;
2. Issue a written order specifying which accommodations are granted no later than August 11, 2026;
3. Order that the August 12, 2026 hearing be conducted via Zoom unless Defendant waives remote appearance;
4. Authorize Defendant to record proceedings and to have an advocate present;
5. Order mandatory breaks every 30 minutes; and
6. Continue the August 12, 2026 hearing if accommodations cannot be provided by that date.

Respectfully submitted this 10th day of August, 2026.

# Ex. G

SECOND AMENDED COMPLAINT - V4 COMPLIANT PER ORDER DOC. 14

BINFORD RULING - Hardship Without Findings Then Recused

Para 31

Steensland did NOT recuse - Binford did - Corrected per your instruction

CASE: 1:26-cv-647-ECM-SMD

DOCUMENT 54

ELECTRONICALLY FILED
4/14/2026 4:26 PM
38-CV-2026-900191.00
CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CARLA H. WOODALL, CLERK

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

| | | |
|---|---|---|
| BEY NOBLE HALONA | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: CV-2026-900191.00 |
| | ) | |
| THE CITY OF DOTHAN | ) | |
| WINGFIELD STEPHANIE | ) | |
| KITTS ROY | ) | |
| HALL ALLISON | ) | |
| COWPER KEVIN | ) | |
| PIERCE LAPORTIA | ) | |
| WHITE FREDDIE LENTON II | ) | |
| Defendants. | ) | |

ORDER ON AFFIDAVIT OF SUBSTANTIAL HARDSHIP

Affiant is not indigent and request is DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that the court reserves the right and may order reimbursement of attorney's fees and expenses, approved by the court and paid to the appointed counsel, and costs of court.

DONE this 14th day of April, 2026

/s/ HENRY D "BUTCH" BINFORD

CIRCUIT JUDGE

State of Alabama Houston County
I, Carla Woodall, Clerk of The Circuit, Hereby certify that this is a true correct copy of Order on Affidavit
filed in this court in Circuit Court
This the 10 day of August, 2026
[signature]
Circuit Clerk

THE CIRCUIT COURT STATE OF ALABAMA

Exh B

576

ELECTRONICALLY FILED
6/30/2026 10:13 AM
38-CV-2026-900191.00
CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CARLA H. WOODALL, CLERK

# IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

BEY NOBLE HALONA,
Plaintiff,

V.

Case No.: CV-2026-900191.00

THE CITY OF DOTHAN,
WINGFIELD STEPHANIE,
KITTS ROY,
HALL ALLISON ET AL,
Defendants.

## ORDER

I recuse in this case. I have had a personal and professional relationship with at least one of the named defendants. Additionally, I have previously presided over what appears to be a related matter as to the defendant Wingfield (CV-2022-000058).

This case shall be forwarded to the Presiding Judge for reassignment.

**DONE this 30th day of June, 2026.**

/s/ HENRY D "BUTCH" BINFORD
CIRCUIT JUDGE

State of Alabama Houston County
I, Carla Woodall, Clerk of The Circuit, Hereby certify that this is a true correct copy of Order
filed in this court in Circuit Court
This the 10 day of August, 2026
[signature]
Circuit Clerk

THE CIRCUIT ... STATE OF

Extra
Judge Binford
recusing himself

# Ex. F - UPL

SECOND AMENDED COMPLAINT - V4 COMPLIANT PER ORDER DOC. 14

MUTILATED COURT RECORD - UPL CHARGE

Original Statement: 'I'm not appearing as a licensed attorney' and intention - Aug 2025

Mutilated Version: Marked out by Woodall so not recorded

Para 33, 47, 48

Proves access to courts violation and UPL entrapment

CASE: 1:26-cv-647-ECM-SMD

# COURT RECORD STATEMENT

For the record, I, **Noble Halona Bey**, appear not as licensed legal counsel but as the duly appointed **Attorney-in-Fact** for **Joshua Mikael Bighems**, pursuant to a valid Power of Attorney filed into the record. This authority is executed under **common law contract rights** as secured by Article I, Section 10 of the U.S. Constitution, which guarantees the freedom to contract. My authority further arises under trust law and ecclesiastical canon law, protected by the Alabama Uniform Power of Attorney Act and 42 U.S.C. § 1981. Said delegation is consistent with common law fiduciary principles and ecclesiastical duty. I further note that under **18 U.S.C. § 7(2)**, federal jurisdiction is limited to maritime and territorial matters and does not extend to private contracts, trust agreements, or purely state-level due process matters. Therefore, my appearance is solely in a fiduciary capacity as private representative of the Principal. This statement is placed into the record to ensure clarity of role, capacity, and constitutional foundation of authority, expressly under **common law**.

by: Noble Halona Bey, Attorney In Fact
Noble Halona Bey, Attorney-in-Fact w/o recourse
Date: 7-22-25

Not Filed in Clerk's Office

FILED

AUG 2? 2025

Carla Woodall
Carla Woodall, Clerk
Houston County, AL

Carla H. Woodall
8-20-2025

EXH. N-6

Here is your Exhibit Cover Sheet for #9 - Ex.Receipt $394 fee — Compliant per Doc.14 Page 7(3) — Matches your Tie Chart — Ready to print and attach in front of your $394 receipt: , certificate of exemplification , Wodall and Richardson signed off on it.

EXH. #9

ALABAMA [illegible]

[illegible] 2025

[illegible] 44

ASE: [illegible]

ECEIVED FROM: [illegible]

AMOUNT: [illegible]

[illegible] CASH

[illegible] .50

FOR: [illegible]

*** [illegible] ***

CEIVED BY: [illegible]

| State of Alabama<br>Unified Judicial System<br>Form C-36 Rev. 10/99 | **CERTIFICATE OF EXEMPLIFICATION** | Case Number<br>CC2025-318 |
|---|---|---|

**STATE OF ALABAMA**

IN THE CIRCUIT COURT OF HOUSTON, ALABAMA
(Circuit or District) (Name of County)

STATE OF ALABAMA v. JOSHUA BIGHEMS
(State of Alabama or Plaintiff) Defendant

I, CARLA H. WOODALL, Clerk of the above-named Court, do hereby certify that the documents annexed to this Certificate of Exemplification are true copies of originals on file and of record in this office.

In witness whereof, I have hereunto set my hand and Seal of the Court, this date.

Carla H. Woodall
Clerk

11-18-25
Date

I, CHRISTOPHER K. RICHARDSON, Judge of the above-named Court, do hereby certify that, CARLA H. WOODALL, whose name is signed to the preceding Certificate of Exemplification, is the Clerk of the above-named Court, duly elected/appointed, and that full faith and credit are due to his/her official acts. I further certify that the Seal affixed to the Exemplification is the Seal of the Court, and that the attestation thereof is in due form of law.

[signature]
Judge

NOV 18, 2025
Date

I, CARLA H. WOODALL, Clerk of the above-named Court, do hereby certify that CHRISTOPHER K. RICHARDSON, whose name is signed to the foregoing certificate, is the Judge of the above-named Court, elected and sworn, and that the signature of the Judge is genuine.

In witness whereof, I have hereunto set my hand and affixed the Seal of the Court, this date.

Carla H. Woodall
Clerk

11-18-25
Date

Exh K

**IN THE DISTRICT COURT OF HOUSTON COUNTY, ALABAMA - CIVIL**
**STEVE H. BYLE v. LATONYA DORSEY a/k/a NOBLE HALONA BEY**
~~Case No: DV 2025-900714.00 - Page 1 of 5~~

**EMERGENCY MOTION TO CONTINUE OCT 29th**
**AFFIRMATIVE DEFENSES AND 10-COUNT COUNTERCLAIM**
**CIVIL - JURY WITH MY PEERS - PENDING - $100k**

**STATEMENT OF CLAIM: CIVIL - JURY TRIAL WITH MY PEERS DEMANDED - COUNTERCLAIM - PENDING**

Defendant Noble Halona Bey f/k/a Latonya Dorsey, pro se, files Emergency Motion to Continue trial
set Oct 29th without jury, Affirmative Defenses, and 10-Count Counterclaim $100,000 compensatory plus
punitive, demands jury trial with my peers first - Ala Const Art I Sec 11 - Exhibits marked PENDING
per Ala.R.Civ.P. Rule 15 - To supplement within 60-90 days - Civil case DV-2025-900714.00 - Eviction
action filed by Plaintiff claiming ownership via deeds done by James Tumer and Steve Byles -
Defendant denies ownership and counterclaims for damages.

**VENUE AND JURISDICTION: CIVIL - JURY WITH MY PEERS - TO STAY IN COURT**

Venue proper Houston County - Property 816 Columbia Hwy Dothan AL 36303 located Houston County -
All events occurred Houston County - Plaintiff entered business Sunday May 11 2025 WITH Monty Irvin -
Monty Irvin came in restaurant with Byles - Both entered during business hours customers present -
TPM Services / Patrease Peaster lease executed Houston County - Deeds by James Turner and Steve Byles
recorded Houston County Probate - Jurisdiction: District Court has unlawful detainer jurisdiction but
counterclaim $100k exceeds $20k District limit Ala Code 12-12-31 - Must transfer to Circuit Court for
jury trial with 12 peers - Art I Sec 11 - Rent escrowed - Title contested CV-2025-900359.00 Stay order
8/18/2025 bars eviction Ex parte Hodge 153 So3d 734 - No prejudice to continue 60-90 days.

**PARTIES: CIVIL**

Plaintiff Steve H Byle - Claims landlord via deeds James Turner to Steve Byles -
Defendant Noble Halona Bey f/k/a Latonya Dorsey d/b/a Mama T's restaurant 816 Columbia Hwy Dothan -
Lawful lessor TPM Services / Trish Peaster / Patrease Peaster - Valid lease March 1 2025 - Dec 31 2025 -
James Turner and Steve Byles - Grantor and grantee of disputed deeds $0 or $10 consideration sham -
Monty Irvin - Came in restaurant with Byles Sunday May 11 2025 - Present during threat - Witness to orchestration.

**AFFIRMATIVE DEFENSES: CIVIL - TO STAY IN COURT - MEETS RULE 8(c)**

1. Lack of standing - No deed - Deeds done by James Turner and Steve Byles - No money paid - No consideration
   $0 or $10 nominal - Just exchange paperwork - Without knowledge consent Patrease Peaster / TPM Services -
   Exhibit J PENDING deeds Houston County Probate showing $0 $10 - Exhibit J-1 HAVE Court found Turner not credible -
   Exhibit J-2 HAVE Court ordered deeds set aside contempt - Void - No title - No standing.
2. Valid lease TPM Services / Trish Peaster 816 Columbia Hwy March 1 2025 - Dec 31 2025 - Quiet possession - Rent
   escrowed - Lease clause Tenant may remove improvements / trade fixtures when leave - Exhibit A PENDING formal
   copy - Affidavit attached - $10k grease trap in ground removable - Can move it too - Defendant retains ownership -
   Trade fixture not real estate - Creel v Houston County 135 So3d 268.
3. Improper Sunday service May 11 2025 two docs same day - Monty Irvin came in restaurant with Byles - Both entered
   during business hours customers present - Ala Code 6-8-70 - Bad faith - Extortion - Exhibit G HAVE lease backdated -
   Exhibit H HAVE 30-day notice same day - Exhibit K HAVE affidavit Monty Irvin with Byles.
4. Prior dismissal July 31 2026 no activity no notice adjudication on merits Rule ~~41(b)~~



mamat1209@yahoo.com
334-589-3361